## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

CARL C. JACKSON,             )
                               )
         Petitioner,        )
                               )
v.                          )        Case No. CIV-12-702-W
                               )
TERRY MARTIN, Warden,   )
                               )
         Respondent.     )

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing pro se, seeks a writ of habeas corpus under 28 U.S.C. § 2254. United States District Judge Lee R. West referred the matter for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C), and it is now before the undersigned Magistrate Judge. Respondent has filed a response, Doc. 16, together with the relevant state court trial transcript ("TR") and the original record ("OR"). Petitioner has filed a reply, Doc. 19, and the matter is now at issue. For the reasons discussed below, the undersigned recommends denying habeas relief.

## I.    Introduction.

Donne Jeffers was shot and killed in Oklahoma City. Petitioner confessed and the State of Oklahoma charged him with first degree murder.

After a mistrial, a jury convicted Petitioner and he now seeks a writ of habeas corpus. Doc. 1.

Petitioner raises two overarching claims: ineffective assistance of appellate counsel and cumulative error.

In his ineffective assistance of appellate counsel claim, Petitioner points to eight instances where his appellate attorney allegedly neglected to challenge his trial attorney's ineffectiveness — specifically, trial counsel's failure to:

(1)　debunk the State's theory that the victim had been shot as he was running away;

(2)　discredit the "bald allegation" that Petitioner was attempting to leave the house after the shooting, or present evidence that crime-scene tape was not securing the house;

(3)　challenge the ballistic evidence on several fronts;

(4)　convince the jury that Petitioner could not have fired as many weapons as alleged;

(5)　admit evidence proving a black car was fleeing the scene after the shooting, and sufficiently challenge a witness's testimony on the issue;

(6)　use DNA evidence, or argue the lack of such, to distance Petitioner from the ammunition box found inside the attic;

(7)　convince the jury that Petitioner's confession was false; and

(8)     file a motion to suppress the evidence of an illegal search and
        seizure.[1]

Doc. 1, at 3-22.

Petitioner also raises four trial court errors, arguing that when
aggregated they rendered his trial fundamentally unfair.  To that end,
Petitioner alleges:

---

[1]     Interspersed in Petitioner's ineffective assistance of appellate counsel
claims are statements also suggesting:  (1) insufficient evidence to support
the conviction; (2) perjury; (3) confession coercion; (4) a *Miranda* rights
violation; (5) prosecutorial misconduct; and (6) a Fourth Amendment violation
through an unreasonable search and seizure.  Doc. 1, at 3-20.  The
undersigned finds that his petition, even liberally construed, inadequately
preserves these allegations as independent claims for relief.

Petitioner filed a direct appeal and an application for post-conviction
relief in state court.  Doc. 16, Exs. 1, 4.  On direct appeal, Petitioner raised a
claim involving insufficient evidence, but it was based on a legal argument
not relied on in the habeas petition.  *Compare* Doc. 1, at 4-6, *with* Doc. 16, Ex.
1, at 19-22.  And, although he mentioned most of the remaining claims,
Petitioner did not raise them as independent claims for relief in either the
direct appeal or the application for post-conviction relief.  Doc. 16, Exs. 1, 4.
Seemingly for that reason, the Oklahoma Court of Criminal Appeals
("OCCA") did not consider these issues as independent claims or address
them on the merits.  *Id.* Exs. 3, 7.  Indeed, it appears that Petitioner has
carefully crafted most of his habeas claims to involve ineffective assistance of
appellate counsel so as to avoid a nonexhaustion defense.  To that end,
liberally construing these statements as independent claims for relief would
likely interfere with Petitioner's intentions and could result in unfairness to
Respondent, as he has not had the opportunity to address these claims on the
merits or otherwise raise a nonexhaustion defense.

(1)    a deficient police investigation resulting in "compromised" evidence;

(2)    the trial court's erroneous ruling regarding gang activity;

(3)    a missing jury instruction involving the consideration of the confession; and

(4)    trial judge bias.

*Id.* at 21-22.

## II.    Standard of review for habeas relief.

In relevant part, a petitioner is entitled to federal habeas relief only if the state court's merits-based adjudication of his claims "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d). This "highly deferential" standard "demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (quotation omitted).

This Court first determines "whether the principle of federal law on which the petitioner's claim is based was clearly established by the Supreme Court at the time of the state court judgment." *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006); *see also Hooks v. Workman*, 689 F.3d 1148, 1163 (10th Cir. 2012).

Clearly established law consists of Supreme Court holdings in cases where the facts are similar to the facts in the petitioner's case. *House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). "The absence of clearly established federal law is dispositive under § 2254(d)(1)." *Id.* at 1018. So, only if this Court answers "affirmatively the threshold question as to the existence of clearly established federal law, may it inquire whether the state court decision is either contrary to or an unreasonable application of such law." *Id.*

If clearly established federal law exists, this Court then considers whether the state court decision was contrary to or an unreasonable application of that clearly established federal law. *Bland*, 459 F.3d at 1009. "A decision is 'contrary to' clearly established federal law . . . if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if the state court confronts a set of facts . . . materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from the result reached by the Supreme Court." *Id.* (quotations omitted) (alterations in original). "A state court decision involves an 'unreasonable application' of federal law if the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's

case." *Id.* (quotation omitted) (alteration in original). Thus, "[a]s a condition for obtaining federal habeas relief, . . . a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011).

This Court applies a less deferential standard if the state court has not adjudicated the merits of a petitioner's claim. In such situations, this Court exercises its "independent judgment in deciding the claim." *McCracken v. Gibson*, 268 F.3d 970, 975 (10th Cir. 2001).

## III. Analysis of Petitioner's ineffective assistance of counsel claims.

As noted above, Petitioner raises eight claims of ineffective assistance of appellate counsel. The OCCA rejected these claims on the merits, Doc. 16 at Ex. 7, and the undersigned finds that decision to be a reasonable application of Supreme Court law.

### A. Clearly established law.

The Supreme Court "clearly established" the applicable law for ineffective assistance of counsel claims in *Strickland v. Washington,* 466 U.S. 668, 690-91 (1984). There the Court held that on a claim involving ineffective assistance of counsel, a petitioner must show that the attorney's performance

was constitutionally deficient and prejudicial. *Id.* Under this familiar standard, an attorney's performance is only considered "deficient" if it falls "outside the wide range of professionally competent assistance." *Id.* "[P]rejudice" involves "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*

Because of the generality of the *Strickland* test, the state appeals court is given considerable latitude in its analysis to which this Court applies "doubly deferential judicial review." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). With this latitude, this Court must assess the reasonableness of the OCCA's application of the *Strickland* standard. *Harrington*, 131 S. Ct. at 785.

## B. Denial of habeas relief based on the OCCA's post-conviction ruling.

Petitioner raised his claims of ineffective assistance of appellate counsel in his application for post-conviction relief, and the OCCA affirmed the denial of relief. Doc. 16, Ex. 4, at 2-16 (application for post-conviction relief), Ex. 7, at 1-4 (OCCA order). Specifically, the OCCA held that Petitioner had "failed to show that his representation on direct appeal was deficient, and that the

result of his case would have been different but for counsel's error." *Id*. Ex. 7, at 3.

Because the OCCA has already concluded, in essence, that it would not have reached a different outcome had the appellate counsel raised the omitted claims on direct appeal, the Court can already be assured that appellate counsel's conduct was not prejudicial. That alone is fatal to Petitioner's claims for habeas relief based on ineffective assistance of appellate counsel. *See Freisinger v. Keith*, No. CIV-09-836-C, 2011 WL 4526761, at *5 (W.D. Okla. July 28, 2011) (unpublished magistrate judge recommendation) (finding no ineffective assistance of appellate counsel in light of the OCCA's announcement that the outcome of the state appeal would not have changed had appellate counsel raised the relevant claim), *adopted*, 2011 WL 4502298 (W.D. Okla. Sept. 28, 2011) (unpublished district judge order), *appeal dismissed*, 473 F. App'x. 846, 849 (10th Cir.), *cert. denied*, No. 12-6404, 2012 WL 4373589 (U.S. Nov. 26, 2012); *Flippo v. Jones*, No. CIV-09-1240-C, 2010 WL 1224240, at *1, *9 (W.D. Okla. Feb. 4, 2010) (unpublished magistrate judge recommendation) ("Given the OCCA's [rejection of the claims], . . . . Petitioner has . . . failed to demonstrate a reasonable probability that the result of his direct appeal would have been different had

his appellate counsel raised a claim of ineffective assistance of trial counsel . . . ."), *adopted*, 2010 WL 1334238 (W.D. Okla. Mar. 23, 2010) (unpublished district judge order), *certificate of appealability denied*, 392 F. App'x 652 (10th Cir. 2010).

### C. Denial of habeas relief with examination of the individual allegations of ineffective assistance of appellate counsel.

The same outcome results with an individual examination of each of Petitioner's ineffective assistance of appellate counsel claims.

Appellate counsel is not "ineffective for failure to pursue meritless claims." *Cannon v. Mullin,* 383 F.3d 1152, 1177 (10th Cir. 2004). Because Petitioner's ineffective assistance of appellate counsel arguments are all related to trial counsel's alleged errors, the Court must examine the trial attorney's conduct. *See Duckett v. Mullin*, 306 F.3d 982, 996 (10th Cir. 2002) ("In order to succeed on his claim that appellate counsel was ineffective [for failing to raise a claim of ineffective assistance of trial counsel, Petitioner] must first demonstrate that he would have been entitled under *Strickland v. Washington*, . . . to relief for the ineffectiveness of trial counsel.").

### 1. Trial counsel's alleged failure to challenge the State's theory that the victim was shot from behind.

Petitioner argues that his appellate attorney should have challenged his trial counsel's failure to question the medical examiner so as to debunk

the State's theory that the victim was shot while running away. Doc. 1, at 3-4. The medical examiner testified that the victim was shot four times, including once in his buttocks. TR vol. 4, at 548-49. During closing argument, the State implied that Mr. Jeffers was likely shot while running away. *Id.* vol. 6, at 927-28.

Petitioner presented testimony that he was inside the house and not involved in any way with the shooting. *Id.* at 871-74, 940. In fact, Petitioner's testimony at trial was that rival gang members shot Mr. Jeffers. *Id.* at 801-02, 828-29, 870-74. Under that theory, the undersigned cannot discern the relevance of whether Mr. Jeffers was shot while running away. To that end, Petitioner has failed to demonstrate a reasonable probability that the outcome of his trial would have been different if trial counsel had attempted to "debunk" the State's theory. With no underlying trial counsel error, the undersigned finds that the OCCA reasonably concluded that appellate counsel's failure to raise the issue on direct appeal was not prejudicial. *See Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003) ("[I]n analyzing an appellate ineffectiveness claim based upon the failure to raise an issue on appeal, we look to the merits of the omitted issue. . . . [I]f the issue is meritless, its omission will not constitute deficient performance." (internal quotation marks omitted)).

### 2. The trial attorney's alleged failure to discredit the suggestion that Petitioner was leaving the house when apprehended.

Oklahoma City Police Officer Stan Campbell testified that Petitioner had been attempting to leave the scene in an automobile after the shooting, suggesting that Petitioner was removing crime-scene tape to do so. TR vol. 3, at 372-75. Petitioner disputed that testimony at trial, telling the jury that the crime-scene tape was not stretched around the house, and that his son and a female had been leaving, but that Petitioner had intended to stay at the house. *Id.* vol. 6, at 876-77, 899.

Here, Petitioner claims that the officers had no "DNA" or "fingerprint" evidence from the automobile to support their "BALD allegation" that he had attempted to leave the scene. Doc. 1, at 18. Petitioner claims that his trial attorney was ineffective for failing to argue this to discredit the officers and claims that there was additional evidence regarding the crime-scene tape that the attorney failed to admit. *Id.* Ultimately, Petitioner alleges that his appellate attorney was constitutionally ineffective for failing to raise these issues on direct appeal. *Id.* at 16-20. The undersigned finds that the OCCA's conclusion that the omission of these issues on direct appeal was not prejudicial was a reasonable one.

For instance, defense counsel presented testimony from Petitioner and his son that Petitioner was not attempting to leave the house. TR vol. 6, at 838, 876-77, 899. Additionally, Officer Campbell testified that Petitioner was *not* interfering with crime-scene tape. *Id.* vol. 3, at 382. Officer Campbell also testified that the tape delineating the crime scene was expanded *after* officers approached Petitioner and found shell casings in the yard. *Id.* at 376, 381-82.

In light of this evidence, trial counsel's conduct was not ineffective and appellate counsel had no meritorious claim to raise on direct appeal. *See Cargle*, 317 F.3d at 1202. The OCCA's finding in that regard was therefore an entirely reasonable application of *Strickland*.

### 3. Trial counsel's alleged failure to challenge the ballistic evidence.

Petitioner believes that his appellate counsel should have argued on direct appeal that the trial attorney was ineffective at challenging the ballistic evidence. Doc. 1, at 5-7. Petitioner gives three specific examples of the trial attorney's alleged errors.

First, Petitioner argues that trial counsel failed to challenge inconsistent evidence regarding the type of projectile that fatally wounded Mr. Jeffers. *Id.* at 5. At trial, firearms expert Ronald Jones identified the

bullet removed from the victim's chest as a ".38 caliber," and testified that it had been fired from the same gun as another projectile located at the scene. TR vol. 4, at 584-85. The second projectile, labeled at trial as "Spruill Number 8" (in reference to the police officer that located and tagged the projectile), had been found in the yard between the decedent and the red truck. *Id.* at 518-19; *see also id.* at State's Ex. 3 (indicating that the vehicle in the yard with the victim is a red truck), Exs. 25-27. Officers also found four ".45 auto caliber cartridge cases" near the red truck. *Id.* vol. 4, at 516, 587; State's Exs. 14-18, 27. During cross-examination, Mr. Jones agreed that the projectile found in the victim's chest had been found near the red truck. *Id.* vol. 4, at 593.

Petitioner interprets the evidence as showing that *only* ".45" caliber projectiles were found around the red truck, and thus believes that Mr. Jones "gave false and misleading testimony when at first he claimed that a .38 projectile had been removed from the victim's chest." Doc. 1, at 5. Petitioner contends that his counsel should have brought the alleged inconsistency to the jury's attention, and faults his appellate attorney for not claiming ineffective assistance of trial counsel on direct appeal. *Id.* The OCCA reasonably rejected the ineffective assistance of appellate counsel claim.

The trial evidence demonstrated that *both* a ".38" projectile and ".45" projectiles were found near the red truck in the front yard. TR vol. 4, at 518-19, 593. Thus, Mr. Jones's testimony that the ".38" projectile removed from the victim's chest matched a ".38" projectile found near the red truck was neither misleading nor inaccurate. Trial counsel therefore had no reason to argue such an inconsistency, and his failure to do so was not constitutionally deficient. With no underlying trial counsel error, the undersigned finds that the OCCA reasonably concluded that appellate counsel was not ineffective for failing to raise this issue on direct appeal. *See Cargle*, 317 F.3d at 1202.

In his second example, Petitioner argues that because a "9mm" bullet was found lying underneath the victim's body, "there is a strong possibility that the victim was mortally wounded by a 9mm and not a .38 as the State has alleged." Doc. 1, at 7. Petitioner believes his trial attorney was ineffective for failing to make the jury understand this, and that appellate counsel should have raised the issue on direct appeal. Again, the OCCA's rejection of this claim was a reasonable application of federal law.

Investigators did find a "9mm" bullet underneath Mr. Jeffers's body. TR vol. 4, at 511, 527. But Mr. Jones, the firearms expert, testified that the projectile removed from the victim's chest was a ".38" caliber projectile. *Id*. at 593. Petitioner offers only his own speculation that Mr. Jones might have

been incorrect and guess-work fails to demonstrate trial counsel's deficiency for failing to address the issue. *See Byrd v. Workman*, 645 F.3d 1159, 1168-69 (10th Cir. 2011) (holding that "[m]ere speculation is not sufficient to satisfy" the *Strickland* burden). Because the underlying issue lacks merit, appellate counsel's omission of that claim cannot constitute deficient performance. *See Cargle*, 317 F.3d at 1202. The undersigned therefore finds that the OCCA's rejection of this ineffective assistance of appellate counsel claim was reasonable.

In his final example, Petitioner argues that defense counsel should have questioned the police witnesses regarding the discovery of a ".45 Hornady" shell casing. Doc. 1, at 19. Petitioner argues that "Hornady" bullets are "professional cartridges" "generally used by Police Tactical teams, Military snipers or Professional game hunters, NOT by average citizens and street gangsters." *Id.* He "questions the very presence of that Hornady casing" and wonders "how did it get there and why was it there?" *Id.* The Court should find the OCCA's decision on this claim to be a reasonable application of *Strickland*.

First, defense counsel did not question the police officers about the "Hornady" shell, but he did argue in closing that the presence of a "Hornady"

shell suggested "another gun entirely, another series of weapons." TR vol. 6, at 950.

Second, aside from voicing his own perplexity, Petitioner offers no explanation of how exploration into the existence of a "Hornady" shell casing at the crime scene would have likely resulted in a different outcome at trial. Indeed, Petitioner believes that rival gang members shot and killed Mr. Jeffers. Doc. 1, at 4-5; *see also* TR vol. 6, at 801-02, 828-29, 870-74. If so, how would eliciting testimony regarding the "Hornady" shell — which Petitioner believes gang members do *not* use — have likely resulted in a different outcome for him at trial? There is not a reasonable possibility that it would have, so appellate counsel did not have a meritorious claim to raise on direct appeal. *See Cargle*, 317 F.3d at 1202. As such, the undersigned cannot conclude that the OCCA was unreasonable when it found that appellate counsel's failure to raise this issue resulted in no prejudice.

### 4. Trial counsel's failure to convince the jury that Petitioner could not have fired both weapons.

Petitioner notes that the evidence at trial showed that two weapons were fired at Mr. Jeffers, one firing a ".38" projectile and one firing a ".45" projectile. Doc. 1, at 6. Petitioner argues that his trial attorney failed to "convince the jury of the reality of the fact that one man could not have done

all that the State had claimed." *Id.* at 7. In turn, Petitioner believes appellate counsel should have raised this argument on direct appeal. *Id.*

The jury watched a video-taped police interview wherein Petitioner stated that he was the shooter, that he had used two weapons — a "snubnose" and a "Colt .45" — and that he could "shoot like a . . . cop." TR at State's Ex. 76, at 51:15 (video-tape).

Despite this damaging evidence, the trial attorney nevertheless argued to the jury that the weight of the evidence suggested that more than one person was shooting towards Mr. Jeffers. *Id.* vol. 6, at 936, 950. Petitioner has failed to identify what else trial counsel could have argued under the circumstances. Given Petitioner's incriminating statements, there is not a reasonable probability that the trial's outcome would have been different even if trial counsel had fashioned another argument. And without a trial counsel error, appellate counsel had no constitutional obligation to raise the argument on direct appeal. *See Cargle*, 317 F.3d at 1202. Consequently, the undersigned finds that the OCCA reasonably applied *Strickland* in determining that appellate counsel's failure to raise the issue did not prejudice Petitioner.

### 5. Trial counsel's failure to introduce reports regarding a black car fleeing the scene or sufficiently examine a witness on the issue.

Petitioner's theory is that several rival gang members, driving a black car, shot and killed Mr. Jeffers, and Petitioner and his son both testified accordingly. TR vol. 6, at 801-02, 828-29, 870-74. Petitioner states that several other people also saw the black car but his trial attorney did not seek to admit the relevant "reports." Doc. 1, at 7. As with his other claims, Petitioner ultimately blames his appellate counsel for failing to challenge trial counsel's alleged ineffectiveness on direct appeal. *Id.*

Petitioner cites two police reports that he believes should have been admitted into evidence. *Id.* at Exs. 16-17. The first report contains Quinntale Nelson's statement that a black car pulled up to the house just before the shots were fired. *Id.* at 7 & Exs. 16-17. The second report contains Bonita Huffman's statement that she did not see anything, but heard "car tires screeching." *Id.* at 7 & Ex. 17.

Mr. Nelson could not be located for trial. TR vol. 5, at 684; vol. 6, at 784. Therefore, the trial attorney asked the police officer to tell the jury what Mr. Nelson had reported to him. *Id.* vol. 5, at 675-76. The State objected, and the trial court sustained the objection, noting that the testimony would have been hearsay. *Id.* at 676. Any attempt to offer the actual police reports

would have likely met the same ruling. *See id.* (the trial judge's admonishment to Petitioner's attorney that: "You're not allowed to read from the police reports. That's basic evidence code."); *see also* Okla. Stat. tit. 12 § 2803, 2009 evidence subcommittee's note (stating that § 2803(8) "make[s] clear that police investigative reports . . . will not be admissible in evidence").

In light of the police reports' probable inadmissibility, and the fact that the trial attorney successfully introduced evidence about the black car through Petitioner and his son's testimony, Petitioner cannot reasonably show that his attorney was constitutionally deficient in failing to offer the actual police reports into evidence. Accordingly, the undersigned finds that the OCCA reasonably applied the established federal law in rejecting the related ineffective assistance of appellate counsel claim.

Petitioner also alleges that his attorney failed to challenge Devoria Caesar's testimony. Doc. 1, at 14-15. Counsel had called Ms. Caesar as a witness anticipating that she would testify that she had seen the black car. TR vol. 6, at 784. However, on the witness stand Ms. Caesar testified that she had seen a car driving away, but that she could not identify it. The witness thought that the car she saw had been impounded. *Id.* at 850. Petitioner believes that this testimony implicated the use of his own impounded car, and argues that his attorney was constitutionally ineffective

for failing to "contest[]" Ms. Caesar's testimony.  Doc. 1, at 15.  As with the other claims, Petitioner ultimately places the blame on his appellate counsel for failing to raise the issue on direct appeal.  *Id.*

Petitioner's argument confuses the prosecution's case.  The State never alleged that Petitioner had been shooting from a car — so, it is unlikely that the jury could have been confused about whether Ms. Caesar was referring to Petitioner's car.  At bottom, Petitioner has failed to establish that a challenge to the witness's testimony would have likely changed the outcome of his trial and in turn, that the outcome of his direct appeal would have been different if appellate counsel had raised the issue.  For that reason, the undersigned finds that the OCCA's rejection of the claim was a reasonable application of Supreme Court law.

### 6. Trial counsel's failure to use DNA evidence or argue the lack of such to distance Petitioner from the box of ammunition.

Officers found a box of ".38" ammunition in the attic of the house where the shots had allegedly been fired, and the State suggested that Petitioner may have hidden the box.  TR vol. 3, at 360; vol. 4, at 436-37 (the finding of the ammunition); vol. 6, at 919-22 (the State's comments).  Petitioner alleges that his defense counsel "made no serious attempt to use DNA," or argue its lack of existence, to debunk the State's theory, and that appellate counsel

therefore had a constitutional duty to raise the issue on direct appeal. Doc. 1, at 10. Looking at the merits of the underlying trial counsel error claim, the undersigned finds that the OCCA reasonably rejected the ineffective assistance of appellate counsel claim.

First, officers testified that no DNA or fingerprint testing was performed on the box of ammunition. TR vol. 4, at 473. Thus, Petitioner has failed to explain how the trial attorney could have "use[d] DNA" to discredit the State's theory.

Second, Petitioner incorrectly contends that counsel did not challenge the lack of scientific testing. Defense counsel first elicited testimony from the State's crime scene investigator that "live rounds" can in fact be processed for fingerprints, but that the box of ammunition had not been tested for fingerprints or DNA. *Id.* at 473-74. Then in closing, defense counsel argued:

> I asked repeatedly if any fingerprints were taken from [the box of bullets]. And the answer was repeatedly no. If you have a beautiful pristine box and it has just recently been touched by its supposed shooter, the oil from his hands would still be on the box.
>
> . . . .
>
> Nobody took fingerprints off the box. . . . . Why not?

*Id.* vol. 6, at 938-39.

Clearly, Petitioner's trial attorney made an attempt to challenge the lack of scientific evidence linking Petitioner to the box of ammunition. Because trial counsel did in fact attempt to debunk the State's theory, appellate counsel had no basis for arguing such a deficiency on direct appeal. *See Cargle*, 317 F.3d at 1202. The OCCA's rejection of this claim on direct appeal was therefore a reasonable application of clearly established federal law.

### 7. Trial counsel's failure to convince the jury that Petitioner's confession was false.

In a video-taped police interview, Petitioner repeatedly stated that he shot and killed Mr. Jeffers and that he was not confessing to "protect" anyone. TR at State's Ex. 76, at 1:05:39 (videotape). The jury watched this videotaped confession at trial. *Id.* vol. 5, at 633. Petitioner then testified at trial that he did *not* shoot the victim and that he had given a false confession in order to protect his son. *Id.* vol. 6, at 881-82. Petitioner blames his trial attorney for failing to "be aggressive and adversarial" so as to "convinc[e] the jury that the confession was indeed false," and his appellate counsel for failing to raise the alleged ineffectiveness on direct appeal. Doc. 1, at 11-13. But the record demonstrates that the trial attorney did in fact attempt to discredit the

confession at trial, thus negating appellate counsel's obligation to raise the claim.

For instance, defense counsel began his attack on Petitioner's confession through Oklahoma City Police Homicide Detective Chris Miller's cross-examination. During that examination, defense counsel attempted to establish that:

(1) the interrogation room was uncomfortable and intimidating;

(2) Petitioner had been confined to a police car and/or the interrogation room for a number of hours;

(3) Petitioner was nervous; and

(4) Officer Miller may have been manipulating Petitioner.

TR vol. 5, at 646-77.

Then when Petitioner testified, the attorney had him reiterate the interrogation conditions. *Id.* vol. 6, at 877-81. Defense counsel also asked Petitioner questions that allowed him to explain to the jury why he allegedly made a false confession. *Id.* at 881-84. Finally, during closing argument, defense counsel presented an extensive argument on this matter:

> So now let's go to the confession. Yes, he confessed to doing it and his stated reason was he wanted to save his son's life because he thought that the way this interrogator was acting he might arrest his son and put him in jail. And from his perspective, that was a logical thought process.

His son was living there, had been in the neighborhood, knew some of the people, and had been in the argument with Rab personally. So it's no small leap - - well, it is a small leap to figure out that he might be a person of interest by the police.

And, yes, Mr. Jackson is a knowledgeable person about weapons, he was an MP, he was in the Army, and he worked as a security officer. So - - and he worked with the police in Los Angeles a time or two, more often than not, so he would be able to use the thought processes that an investigator might use and see that his son was a possible suspect. And that's not irrational. You can put that together yourselves.

So he decided - - now, he said, yes, he was not afraid of Mr. Miller. Mr. Miller testified that he was familiar with - - he knew what The Reid Technique was and there as a school that taught that and he had also been to a school in investigatory technique.

That interrogation room was not a pretty place. It was isolated. The chair was hard. He was kept in there by himself for a period of time, after being kept in the police car for a period of time, after being kept in the hallway for a period of time. Now, maybe say, yeah, I wasn't influenced by that, but there are a whole series of psychological points - -

. . . .

You can make that determination. You can see that. All of these things tend to make somebody at the mercy of the interrogator. And Mr. Miller said he was in control. There was no question about who was in control. And, yes, he brought him some nice things to drink, and more things to drink, and more things to drink. Do you want something to drink? What does that do? It puts pressure on your bladder. You don't feel like you can break the interrogation and leave. You're locked in. The door locks automatically. You use a key to open it and get out.

When he first started the interrogation, he said, what happened? And he began to tell him that he didn't really know.

24

He began to tell the truth.  But then Mr. Miller jumped on him.  Don't agree.  Who are you protecting?  What are you hiding?  Challenging him.  Then he realized he wasn't going to listen to him, he wasn't going to believe what he said, and he realized his son was in danger, and he was here by himself in isolation, and so he confesses. Was it foolish?  Yes.  You don't confess to something you don't do.  Does it happen?  Yes.  There are all kinds of terrible things.

*Id.* at 941-43.

Based on the foregoing, it is clear that defense counsel aggressively attempted to convince the jury that the confession was false.  In the absence of any underlying constitutional deficiency, the OCCA could reasonably find that appellate counsel was not ineffective in failing to raise this claim on direct appeal.  Accordingly, the undersigned finds that the OCCA's application of *Strickland* to this claim was reasonable.

## 8. Trial counsel's failure to file a motion to supplement.

Finally, Petitioner also seeks relief based on appellate counsel's omission of a claim that trial counsel failed to file a motion to suppress evidence.  Doc. 1, at 19.  For this claim, the Court need not look at the underlying issue, because Petitioner is simply mistaken.  Appellate counsel did in fact raise the claim on direct appeal.  Doc. 16, Ex. 1, at 22-31.  Consequently, appellate counsel's representation was not constitutionally deficient, and the OCCA reasonably applied *Strickland* when it so found.

### 9.    Summary.

The OCCA reasonably applied *Strickland* when it rejected Petitioner's claims involving ineffective assistance of appellate counsel.  For that reason, the undersigned recommends denial of habeas relief on these claims.

## IV.    Analysis of Petitioner's cumulative error claim.

Petitioner argues that cumulative error rendered his trial fundamentally unfair, pointing to: (1) a deficient police investigation; (2) rulings excluding gang activity evidence; (3) the omission of a jury instruction involving consideration of the confession; and (4) trial judge bias.  Doc. 1, at 21-22.  Petitioner did not rely on these arguments when he raised a cumulative-error claim in state court, Doc. 16, Ex. 1, at 18-19, but the State failed to raise a nonexhaustion defense.[2]  Regardless, on independent review the undersigned recommends denial of the claim because Petitioner cannot demonstrate the existence of two or more constitutional errors.

---

[2]    In fact, the Court could read the response as specifically conceding exhaustion.  Doc. 16, at 2 (stating "Petitioner has exhausted his state court remedies as he raised the issues in his direct appeal or post-conviction application to the Court of Criminal Appeals"); *see also Whitmore v. Dowling*, No. CIV-12-1408-M, 2013 WL 3167922, at *3 n.3 (W.D. Okla. June 30, 2013) (unpublished order) ("Respondent has nevertheless asserted that Petitioner exhausted his administrative and state court remedies. . . .  Therefore, Respondent has expressly waived the exhaustion defense.").

### A. Clearly established law.

The Tenth Circuit has recognized a circuit split regarding whether a cumulative error analysis is clearly established federal law, and noted that the question "remains an open issue in this circuit." *Hooks*, 689 F.3d at 1194, n.24. However, the court noted that it had "long conducted cumulative-error analyses in [its] review of federal habeas claims." *Id.* Applying this precedent, the undersigned determines that Petitioner's cumulative error claim fails.

### B. The applicable law.

"In the federal habeas context, the only otherwise harmless errors that can be aggregated are federal constitutional errors, and such errors will suffice to permit relief under cumulative error doctrine only when the constitutional errors committed in the state court trial so fatally infected the trial that they violated the trial's fundamental fairness." *Littlejohn v. Trammell*, 704 F.3d 817, 868 (10th Cir. 2012) (citations and internal quotations omitted); *see also Ochoa v. Workman*, 669 F.3d 1130, 1146 (10th Cir. 2012) ("In the federal habeas context, the only otherwise harmless errors that can be aggregated are federal constitutional errors . . . ."). As that language implies, this analysis "does not apply to the cumulative effect of non-errors." *Moore v. Reynolds*, 153 F.3d 1086, 1113 (10th Cir. 1998).

### C. Review of the individual claims for constitutional error.

#### 1. The alleged lack of a thorough and proper police investigation.

Petitioner first alleges that the Oklahoma City Police Department failed to perform a "thorough investigation" or follow "usual routine procedures." Doc. 1, at 21. He also claims that he was not "forensically linked" to the evidence and that the evidence was "compromised." *Id.* However, Petitioner does not explain his allegation that officers failed to follow usual routine procedures, or explain how the evidence was "compromised." Without additional factual support, these conclusory allegations cannot establish a constitutional claim. *See Humphreys v. Gibson*, 261 F.3d 1016, 1023 n.2 (10th Cir. 2001) (rejecting habeas allegations because they were "conclusory" (citation omitted)).

The Court may assume that Petitioner's complaints are related to his concern that he was not "forensically linked" to the evidence through DNA and/or fingerprint tests. But this claim also fails to invoke constitutional error in the absence of any bad faith allegations. *See Connick v. Thompson*, 131 U.S. 1350, 1369 (2011) ("[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitutional a denial of due process.").

In sum, Petitioner's claims regarding the investigation and evidence collection do not establish a constitutional error and cannot count towards a cumulative error analysis.

### 2. The trial judge's ruling regarding gang activity evidence.

Petitioner alleges that constitutional error occurred through the trial court's ruling excluding any "direct inference" to gang activity and states that a defense witness could not be called due to the ruling. Doc. 1, at 21. A trial court's evidentiary ruling can only implicate the federal constitution if it "'was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process.'" *Hooks*, 689 F.3d at 1180 (citation omitted).

Petitioner does not provide any factual support for his allegation. Instead, he cites only to rulings made in his *first* trial (which ended in a mistrial). Doc. 1, at 21 & Exs. 42-43. But the rulings from the first trial did not bind the trial court in the second trial. *See United States v. Whitfield*, 590 F.3d 325, 360 (5th Cir. 2009) (rejecting appellant's attempt to show error through a comparison of rulings made at the first and second trials because "the district court was not bound in any way by its evidentiary rulings in the first trial, [and] we consider the district court's rulings in the second trial on

their own merit"). Thus without any explanation of how alleged rulings in the *final* trial deprived Petitioner of a fundamentally fair trial, the undersigned cannot find any constitutional error.

### 3. Missing jury instruction.

According to Petitioner, the "jurors were not told that a confession cannot stand alone." Doc. 1, at 22. The fatal flaw in this argument is that Petitioner is mistaken. The jurors were in fact instructed that they had to find that other evidence corroborated Petitioner's confession and that it must be voluntary before they could rely on the statements. OR vol. 1, 185-86; *see also* OUJI-CR(2d) 9-12 and 9-13. Accordingly, the undersigned finds that Petitioner has failed to establish a constitutional error on this ground.

### 4. Trial court bias.

Finally, Petitioner argues that his trial judge was "biased" and made "unfair rulings." Doc. 1, at 22. This claim also fails to establish a constitutional error. For an actual bias claim, Petitioner must present "compelling" bias evidence. *Fero v. Kerby*, 39 F.3d 1462, 1479 (10th Cir. 1994). Rather than do so, Petitioner relies only on what he perceives to be adverse rulings. But "[u]nfavorable judicial rulings do not in themselves call into question the impartiality of a judge." *United States v. Mendoza*, 468 F.3d

1256, 1262 (10th Cir. 2006). Accordingly, the undersigned finds that this allegation fails to establish a constitutional violation.

### 5. Summary.

Because Petitioner did not establish two or more constitutional errors to aggregate for a cumulative error analysis, he failed to show that cumulative errors fatally infected the trial and violated his rights to fundamental fairness. For that reason, the undersigned recommends that habeas relief be denied on this ground.

## V. Recommended ruling and notice of right to object.

For the reasons discussed above, the undersigned recommends denying the petition for habeas relief.

Petitioner can object to this report and recommendation. To do so, he must file an objection with the Clerk of this Court by September 4, 2013, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Petitioner is further advised that failure to timely object to this report and recommendation waives the right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This report and recommendation disposes of all issues referred to the undersigned Magistrate Judge in this matter.

ENTERED this 14th day of August, 2013.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE